STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310)452-3200

Presented on behalf of Plaintiffs


# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| **DR. DR. B.L. ROSENFELD** and **J. GLASS,** as the parents of Scott Rosenfeld, a Black Man who was killed in custody by the Burbank, California police, | 2:22-cv-00497-DSF(Ex) |
| Plaintiffs, | **THIRD AMENDED COMPLAINT** (Oct. 14, 2022 Order, Doc. 62) |
| v. | (Burbank Police Brutality, Deliberate Indifference to Serious Medical Needs, Criminally Negligent Homicide, Depraved Indifference, and Thuggery, 42 U.S.C. § 1983, 18 U.S.C. § 1961, *et seq.*) |
| **BURBANK MAYOR JESS TALAMANTES URBANK CITY COUNCIL MEMBERS KONSTANTINE ANTHONY, ROBERT FRUTOS, NICHOLAS SCHULTZ, SHARON SPRINGER, BURBANK CITY MANAGER JUSTIN HESS, BURBANK ASST. CITY MANAGER JUDIE WILKE, BURBANK POLICE CHIEF MICHAEL ALBANESE, A. DENNING, P. PIRA, DAWNA JUREKA, MAYRA ROBLES, ROBERT FACTORA, TAYLOR GEORGE, GLEN LARSON, TANYA COOPER,** and **12 UNKNOWN, NAMED CITY OF BURBANK POLICE OFFICERS DEFENDANTS, 1-12,** | **JURY DEMAND** |
| Defendants. | Judge Dale Susan Fischer |

Plaintiffs make the following allegations, on information and belief, in support of the this amended complaint:

//

1

## THE PARTIES

1. Plaintiffs are **DR. DR. B.L. ROSENFELD** and **J. GLASS,** who are the parents of their deceased son, Scott Rosenfeld, and who assert claims both as survival claims and in their own right, and assert federal claims, under 42 U.S.C. § 1983 (civil rights) and 18 U.S.C. § 1961-64 (RICO) against defendants, who are **BURBANK MAYOR JESS TALAMANTES, BURBANK CITY COUNCIL MEMBERS KONSTANTINE ANTHONY, ROBERT FRUTOS, NICHOLAS SCHULTZ, SHARON SPRINGER, BURBANK CITY MANAGER JUSTIN HESS, BURBANK ASST. CITY MANAGER JUDIE WILKE, BURBANK POLICE CHIEF MICHAEL ALBANESE, POLICE OFFICERS A. DENNING, P. PIRA, DAWNA JUREKA, MAYRA ROBLES, ROBERT FACTORA, TAYLOR GEORGE, GLEN LARSON, TANYA COOPER,** and **12  UNKNOWN, NAMED CITY OF BURBANK POLICE OFFICERS DEFENDANTS, 1-12**.

2. Plaintiffs and their decedent, Scott Rosenfeld, are persons who have been subject to Burbank police brutality and deliberate indifference, and defendants are the perpetrators of police brutality and deliberate in difference; and the **12 UNKNOWN NAMED DEFENDANTS**, all of whose true identities presently are unknown and some now are known, who participated in the wrongful acts alleged hereinbelow, and whose conduct is culpable, and whose unknown names will be replaced by their true identities when those true identities are learned, are persons who engaged in and who may have engaged in legally culpable conduct with respect to plaintiffs and their deceased son, as set forth hereinbelow. All defendants engaged in the same conduct by participating in, facilitating, and making the decisions that resulted in the wrongs hereinbelow alleged. Plaintiffs have learned the true names of the police who arrested plaintiff, and they are **A. DENNING** and **P. PIRA**, and the jailors who participated in the booking into the Burbank jail of Scott Rosenfeld, and who each and all made decisions that Scott Rosenfeld be

booked into and held in the jail, **DAWNA JUREKA, MAYRA ROBLES, ROBERT FACTORA, TAYLOR GEORGE, GLEN LARSON, TANYA COOPER**, and each and all who screened plaintiffs' decedent for his entry into and continued detention in the jail.

3. Defendants each and all are sued in both their individual capacities, and only in their official capacities, for the claims made under *Monell v. Dep't of Soc. Svcs. of the City of New York*, 436 U.S. 657 (1978), with respect to which claims defendants are sued in their official capacities only.

4. Plaintiffs and their decedent are persons who have been brutalized and subjected to deliberate indifference, to both constitutional violations and RICO violations by defendants.

5. Defendants and each of them play and played some material role in the acts and/or omissions alleged hereinbelow and in the setting of policies of the Burbank police department.

**ALLEGATIONS COMMON TO EACH COUNT**

6. Each and every allegation set forth in each and every averment herein is incorporated by this reference in each and every other averment and allegation of this pleading.

7. All acts and/or omissions perpetrated and/or engaged in by each defendant, in their individual capacities, were done maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights allegedly violated, despicably, with evil motive and/or intent, in disregard of the rights of plaintiffs and class members, and in clear violation of the Fourteenth Amendment Due Process Clause and of the California Constitution (as to the Bane Act claim), and of controlling federal law, both statutory and common law, as set forth by both the United States Supreme Court and the United States Court of Appeals for the Ninth Circuit, in *Stewart v. Aranas*, 32 F.3d 1192 (9th Cir. 2022),

in that defendant police acted with deliberate in difference to Scott Rosenfeld serious medical needs and are not entitled to qualified immunity because they violated a constitutional right and the right was clearly established at the time of the violation, Jan. 3-4, 2022. *See also Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016).

8. Plaintiffs' and their decedent's rights were sufficiently clear that every reasonable official would have understood that what the police officers did here violated those rights.

9. On or about Jan. 3, 2022, at 2200 West Empire Avenue, in Burbank 91504, beginning at approximately 8:49-9:15 a.m., which was Scott Rosenfeld's residence, Burbank police officers **DENNING** and **PIRA** took into their custody Scott Rosenfeld, a Black man, who was exhibiting signs of both extreme emotional and physical distress, such that a reasonable police officers and jailers, would have known that they had legal duties under the Fourteenth Amendment, not to be deliberately indifferent to Scott Rosenfeld's very serious medical needs, these named defendants and the defendants who screened, booked, and held Scott Rosenfeld into the Burbank jail, **DAWNA JUREKA, MAYRA ROBLES, ROBERT FACTORA, TAYLOR GEORGE, GLEN LARSON, TANYA COOPER**, each and all were deliberately indifferent to Scott Rosenfeld's demonstrable serious medical needs, they all failed to get him immediate medical care and medical intervention, they all placed him in jail cells with others and then by himself, and he died while in their custody, as a direct and proximate result of their deliberate indifference to his serious medical needs, they followed the unconstitutional policies and customs of the Burbank police department, which ignore the requirement not to be deliberately indifferent to the serious medical needs of those in their custody, and these policies and customs, *inter alia*, were the

4

moving forces behind the deliberate indifference and failure to provide needed medical intervention to Scott Rosenfeld.

11. The signs of Scott Rosenfeld's serious medical needs that the arresting police officers and jail personnel observed and that showed he was *in extremis*, were, *inter alia*:

>he was extremely disoriented;

>he did not verbally respond to questions put to him;

>when he stated "it hurts, it hurts" or "oowww, oowww," the police officers **DENNING** and **PIRA** repeatedly and bizarrely asked him what his birthday was, to which he did not respond;

>he was in an "apparent altered state," according to the arresting officers;

>it was determined by the arresting officers that he was unable to care for himself;

>he was unable to acknowledge the *Miranda* rights that were recited to him;

>he was unable to stand on his own without assistance;

>he displayed severe gait ataxia;

>he displayed thought disorder;

>he was unable to recall his own name;

>he was not aware of the date, time, or location, and was disoriented in all three spheres;

>his eyes and pupils were severely constricted and abnormally small;

>his blood pressure was, when measured, 110, 120, and 116;

>he physically was shaking;

>he abnormally profusely was sweating, he was diaphoretic, even though the ambient temperature was 40F and he had no shirt on;

>he was abnormally loud;

>he abnormally was agitated;

>he abnormally was restless;

>he abnormally was displaying signs of anxiety;

>he displayed signs of decreased breathing;

>he exhibited abnormal signs of drowsiness;

>because of his condition, a modified Romberg Test could not be administered to him, because he was unable to comprehend the instructions for taking it;

>at the jail, he was unable to understand the instructions for or to consent to a urine sample;

>he was unusually, very slow to respond to officers' questions, when he responded at all;

>he was unusually loathe to have conversations;

>he manifested with signs of breathing problems and severe sleepiness;

>he was not timely provided with appropriate medical care and treatment, without which medical care and treatment one would suffer serious bodily harm, including, liver failure, respiratory arrest, and would, as Scott Rosenfeld did, die;

>he exhibited classic symptoms of psychosis;

>he exhibited signs of diabetic shock;

>Scott Rosenfeld was at the highest level of disorientation and required an immediate medical intervention, such as taking him to an emergency room, rather than to the police jail;

>due to all of the above, he required immediate medical intervention, which never was provided to him, and as a result of it not being provided, he died as the result of a criminally-negligent homicide and depraved indifference homicide, by the arresting officers and the jail screening personnel, who all were required to provide medical care, but who intentionally and/or deliberately indifferently failed do so;, and,

>further indicia of all of this are set forth in the Autopsy Report that is attached hereto, and whose contents are incorporated herein by this reference.

All of these facts and factors would cause a reasonable person, who was not deliberately indifferent or incompetent, or intentionally violating the United States Constitution and/or breaking the law, to have sought immediate medical care, treatment, and intervention for Scott Rosenfeld, which was not done.

12. The non-Burbank police defendants each and all are legally liable for all of this conduct and inaction because they caused it, ratified it, condoned it, approved of it, and were the moving force that caused it, both before and after the fact of Scott Rosenfeld's death, or otherwise made it possible, by their actions and/or inactions, and caused and/or create Burbank police policies, practices, procedures, and/or customs that caused the Burbank police  officers' unconstitutional conduct.

## COUNT ONE

(Against All Defendants, 42 U.S.C.  § 1983)

13.  By virtue of all of the symptoms set forth in averments 11 & 12, all defendants were aware of Scott Rosenfeld's serious medical needs, did nothing about them, and thereby were deliberately indifferent to them, because defendants made intentional decisions with respect to them that placed Scott Rosenfeld at substantial risk of suffering serious harm and death, defendants failed to take and did not take reasonable, available measures to abate that risk, even though a reasonable person in the circumstances would have appreciated the high degree of risk involved -- death -- making the consequences of defendants' conduct obvious; and by not taking such measures, defendants caused the death of Scott Rosenfeld, as well as plaintiffs' serious harm and loss of familial interests, including Scott Rosenfeld's love and companionship, so that therefore defendants all are liable to plaintiffs and to their decedent, pursuant to 42 U.S.C. § 1983, for violation of decedent's and plaintiffs' Fourteenth Amendment rights, not to be subjected to,

while in custody, deliberate indifference by police, and for loss of plaintiffs' associational rights with their son, decedent Scott Rosenfeld.

15. A "clearly established right" is one that is sufficiently clear, so that every reasonable official would have understood that what s/he is doing violates that right."

16. It is recognized that "the government[] [has an] obligation to provide medical care for those whom it . . . incarcerat[es]," and, on that reasoning, it has been held that "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment's prohibition on cruel and unusual punishment[,] [and] . . . concluded that the same standard should also apply to such claims brought by pretrial detainees, because even though those claims "arise under the due process clause [of the Fourteenth Amendment], the eighth amendment guarantees provide *a minimum standard of care* for determining [a prisoner's] rights as a pretrial detainee, including [the prisoner's] rights ... to medical care." A pretrial detainee is entitled to more rights than a convicted prisoner.

17. Claims brought by pretrial detainees under the Fourteenth Amendment should not be evaluated under the same standard as claims brought by convicted prisoners under the Eighth Amendment.

18. A pretrial detainee, such as plaintiffs' decedent, who brings an inadequate medical care claim must show that:

(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined, and that here is alleged;

(ii) those conditions put the plaintiff at substantial risk of suffering serious harm, and that here has been alleged;

(iii) the defendants did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have

appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious, and that here has been alleged; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries, and here that resulted in Scott Rosenfeld's death.

19. A defendant can be liable even if he did not actually draw the inference that the plaintiff was at a substantial risk of suffering serious harm, so long as a reasonable official in his circumstances would have drawn that inference. Under this objective reasonableness standard, a plaintiff must "prove more than negligence, but less than subjective intent --something akin to reckless disregard," and this here has been pled.

20. Scott Rosenfeld's conditions put him at a substantial risk of serious harm. In the inadequate-medical-care context, the "substantial risk of serious harm" prong has been met because there was manifested a "serious medical need," such that a "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."

21. This is an objective standard, and includes the "existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain," and this here has been pled.

22. Defendants police officers and screening personnel denied, delayed, and intentionally interfered with medical treatment that Scott Rosenfeld required, and that this violated the Constitution, and the constitutional rights were clearly established on Jan. 3-4, 2022.

23. An objective examination shows that established case law would have made clear to every reasonable police officer that the defendants' *conduct* was unlawful in the situation they confronted, because given the available case law at the time, January 3-4, 2022, a reasonable official, perceiving and knowing Scott

9

Rosenfeld's objective manifestations, as now admitted by defendants in their Incident Reports 22-49 and 22-99,[1] whose contents are incorporated herein by this reference, would have understood that their actions and inactions presented such a substantial risk of harm to Scott Rosenfeld that the failure to act was unconstitutional.

24. Defendants' placement of Scott Rosenfeld in a single-person cell all by himself and their failure to provide constant monitoring of him and life-saving measures to meet his obvious need of care provides a basis for liability under § 1983.

## COUNT TWO

(Against All Defendants for Conspiracy Under § 1983)

25.  Plaintiffs reallege specifically hereat the allegations set forth at averments nine through 11-24 hereinabove, and by virtue thereof, all defendants also are liable to plaintiffs for conspiracy to violate the Fourteenth Amendment rights, pursuant to § 1983, because they had an agreement or understanding and a meeting of the minds that the wrongs perpetrated, not getting a medical intervention for Scott Rosenfeld, would be perpetrated, to wit, that they would ignore and be deliberately indifferent to Scott Rosenfeld's and his parents constitutional rights, and because they acted on their agreement or understanding, and had a meeting of their minds, they are liable based on conspiracy. A reasonable person in defendants' situation objectively would not have believed her or his actions and inactions were proper, and defendants, therefore, either were plainly incompetent or knowingly violated clearly-established, constitutional principles. Defendants acted in both their individual *and* official capacities. Defendants all were in one another's and Scott Rosenfeld's physical presence and together, collectively failed to act, thus show ing a meeting of their minds not to act to save

---

[1] These reports are under seal and copies will be provided to the court *in camera*.

his life. Defendants by their concerted inactions showed that they intended to accomplish the unlawful objective of letting Scott Rosenfeld die, which resulted in damage to both him and to plaintiffs. Their agreement was not overt, and is inferred from the circumstantial evidence of Scott Rosenfeld's manifested symptoms and the actions and inactions of defendants. Defendants' actions and inactions are unlikely to have been undertaken without an agreement among them, which allows a jury to infer the existence of a conspiracy, because an unlawful conspiracy generally is a factual issue that should be resolved by a jury, so long as there is a possibility that the jury can infer from the circumstances that the alleged conspirators had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives; and, to be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant need only share the common objective of the conspiracy, evidence of a conspiracy need be only a slight connection, which means that a defendant need not have known all of the conspirators, participated in the conspiracy from its inception, participated in all of its actions or inactions, or known all of its details. And, they also are liable under 42 U.S.C. § 1343.

### COUNT THREE
#### (Against All Defendants  Under § 1983)

26. All defendants are liable to plaintiffs because they had and have, and foster, a policy, practice, procedure, and custom of Fourteenth Amendment violations by members of the Burbank police department, which policies, *etc.*, in violation of the Constitution, were the moving forces that caused the violation of the plaintiffs' rights and of Scott Rosenfeld's rights, as alleged hereinabove; and also the City Council and mayoral defendants are liable because they have a custom of improperly indemnifying, and of conspiring to indemnify, Burbank police officers for punitive damages assessed against those officers by juries in

civil rights cases, because that practice was a moving force that caused the violations of the plaintiffs' rights as alleged herein.

27. More specifically, defendants have, maintain, and tolerate a police department whose police officers have a custom of violating detainees' and arrestees' Fourteenth Amendment rights, by not providing appropriate medical intervention and/or care to those who have been stopped, arrested, and/or taken into custody, and who have displayed, as did Scott Rosenfeld, serious medical problems, for which no medical assistance has been gotten, and they have done this especially with respect to Black men, such as Scott Rosenfeld.

28. What is set forth in averment 16 is the decision of the official policymakers, and is the custom of the police department, who choose this as the particular course of action from among various alternatives -- such as following the Constitution: it is a deliberate choice.

29. What befell Scott Rosenfeld at the hands of the Burbank police, as set forth in detail in hereinabove, is the custom of which complaint is made, and is not a sporadic incident, but is a long-standing, occurrence, and is both frequent and consistent, so that it has become the traditional method of carrying out policy and custom.

30. Moreover, the council member defendants consistently have indemnified police for damages awarded against the police by juries, but have done so improperly by not reading the transcripts of the underlying trials, and thereby have, without basis, overruled jury determinations that police misconduct warranted damages, and this has caused and is the moving force behind, and encourages, police misconduct because it makes police feel free to engage in misconduct: that is, such indemnifications are a moving force behind police misconduct, such as occurred in this case. The indemnifications are not done in good faith because they are done *carte blanche* without being based on any record, and are the policy.

12

31. Moreover, there is official capacity liability for the non-police officer defendants because each one of these, non-police officer defendants individually set a tone which condoned and encouraged the deliberate indifference that the police officer defendants inflicted on plaintiffs' decedent, and policy or custom may be inferred if, after constitutional violations, officials took no steps to reprimand or discharge their subordinates, as here, or if they otherwise failed to admit their subordinates' conduct was in error, also, as here, because subsequent acceptance of deliberate indifference and dangerous recklessness by the policymaker tends to prove her or his preexisting disposition and policy. To the extent the policymakers' opinions of the police officer defendants' conduct and/or deliberate indifference to plaintiffs' decedent shed light on the operation, custom, or policy of the Burbank Police Department, their department, or on ratification or condonation of the injurious acts, their conduct and/or their inaction and/or their statements, are evidence on the issue of their liability.

32. The distinction between each and all of the non-police officers' individual and official capacity liabilities, the proof of which oftentimes overlaps, is made more subtle by the supervisory roles that each one of them occupies, since a supervisory or policy-making official rarely will be directly and personally involved in the same way as are the individual officers, who are on the scene inflicting constitutional injury, but this does not prevent a policy maker or a supervisor from being held liable in her or in his individual capacity. Like the police officers, the non-police officer defendants' individual liability hinges upon their participation in the deprivation of constitutional rights. But unlike the police officers' involvement, which ordinarily is direct and personal, their participation may involve the setting in motion of acts which cause others to inflict constitutional injury.

## Individual capacity liability

33. And, there is the non-police officer, official-capacity defendants also may be found liable in their individual capacities because they set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which they knew or reasonably should have known, would cause others to inflict the constitutional injury, because supervisory liability is imposed against a supervisory official in their individual capacities for their own culpable action or inaction in the training, supervision, or control of their subordinates, for their acquiescence in the constitutional deprivations of which complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others. Plaintiffs allege that, in their individual capacities the non-police officer defendants were responsible for their alleged constitutional deprivations because they condoned, ratified, and encouraged deliberate indifference to serious medical needs of arrestees by the police. Reasonable and responsible persons in the shoes of the non-police defendants would have disciplined the individual officers and would have established new procedures for averting the reoccurrence of similar excesses and deliberate indifference to serious medical needs of prisoners in the future. Yet, neither step was taken by each non-police officer defendant.

33. The investigation into the police defendants' actions and inactions with respect to Scott Rosenfeld's arrest and death was done in accordance with BPD policy and/or custom, and the BPD's investigatory and disciplinary processes, executed by policy or custom, contributed to the police deliberate indifference to the serious medical needs of Scott Rosenfeld and the excesses complained of, because the procedures made clear to police officers that, at least in the absence of independent, third-party witnesses, they could get away with anything, and liability of the non-police defendants may be based on such policy or custom and on the non-police defendants failure to take any remedial steps after the constitutional

14

violations and Scott Rosenfeld's death, because there is a custom of failure to reprimand or discharge police who engage in misconduct, and because subsequent acceptance of dangerous recklessness and deliberate indifference to a prisoner's serious medicaal needs by policymakers tend to prove their preexisting disposition and policy, and the non-police defendants and the Chief of Police speak for the City on police matters.

**WHEREFORE**, plaintiffs request relief against each defendant as follows:

1.  Compensatory damages for all non-RICO violations, in the base sum of $50,000,000.00;

2.  Compensatory damages for all violations;

3.  Punitive damages, in sums to be determined by a jury, and as a percentage of the net worth of each defendant, in sums sufficient to deter future misconduct, and not less than $10,000,000.00 per defendant;

4. The costs of action and interest;

5.  Attorneys' fees; and,

6.  Such other relief as is just and proper.

### JURY DEMAND

Plaintiff demands trial by jury of all issues.

### YAGMAN + REICHMANN, LLP

By: _/s/_ Stephen Yagman
**STEPHEN YAGMAN**

15

**COUNTY OF LOS ANGELES**

**DEPARTMENT OF MEDICAL EXAMINER-CORONER**

1104 N. MISSION RD, LOS ANGELES, CALIFORNIA  90033



*"Enriching Lives"*

**Jonathan R. Lucas, M.D.**
**Chief Medical Examiner-Coroner**

# CERTIFICATION OF RECORDS
# STATE OF CALIFORNIA
# COUNTY OF LOS ANGELES

I **Edna E. Pereyda**, affiant, being of duty sworn, deposes and says as follows:

That affiant is the duly authorized Custodian of Records of the Department of Medical Examiner-Coroner, County of Los Angeles, and has the authority to certify said records, a copy of the Autopsy Report attached to this Certification for decedent **ROSENFELD, SCOTT;** Coroner's Case Number **2022-00141;** is a true copy of all records described, and the records were prepared by the personnel of the Department of Medical Examiner-Coroner in the ordinary course of Coroner business at or near the time of the act, condition, or event.

I declare under penalty of perjury that the foregoing is true and correct.

**September 7, 2022**
**Date**

This is a true certified copy of the record if it bears the seal of the Department of Medical Examiner - Coroner imprinted in purple ink.

**Signature of Affiant**

**CHIEF MEDICAL EXAMINER - CORONER**
**DEPARTMENT OF MEDICAL EXAMINER - CORONER**
**LOS ANGELES COUNTY, CALIFORNIA**

**23** Pages including Certification

---

**Accreditations:**

National Association of Medical Examiners (Provisional)
California Medical Association-Continuing Medical Education
Graduate Medical Education

ANAB ISO/IEC 17025:2017 Forensic Science Testing Laboratories
Peace Officer Standards and Training Certified Accreditation Council for

**Law and Science Serving the Community**

# 12

# AUTOPSY REPORT

I performed an autopsy on the body of ➤

the DEPARTMENT OF MEDICAL EXAMINER-CORONER

at

No.

2022-00141
ROSENFELD, SCOTT

Los Angeles, California    on   January 5, 2022   at   1200
                                          (Date)            (Time)

**From the anatomic findings and pertinent history I ascribe the death to:**

(A)   SEQUELAE OF DIABETES MELLITUS

DUE TO OR AS A CONSEQUENCE OF
(B)

DUE TO OR AS A CONSEQUENCE OF
(C)

DUE TO OR AS A CONSEQUENCE OF
(D)

OTHER CONDITIONS CONTRIBUTING BUT NOT RELATED TO THE IMMEDIATE CAUSE OF DEATH
   EFFECTS OF FENTANYL AND METHAMPHETAMINE

MANNER OF DEATH
   ACCIDENT

HOW INJURY OCCURRED
   DRUG USE

*Anatomic Summary :*

     I.    Hepatomegaly

     II.    Calcified mesenteric mass

   III.    No trauma

     IV.    See toxicology report

**CIRCUMSTANCES:**
See the Coroner Investigator's Report.

**IDENTIFYING FEATURES:**
The body is identified by toe tags and is that of an unembalmed, refrigerated, well-developed adult male who appears the reported age of 48 years. The body measures 73 inches and weighs 175 pounds. There is no jaundice. Faint possible scars are on the back. No tattoos are identified.

**EXTERNAL EXAMINATION:**
The head is normal in size and shape. The scalp hair is grey. There is no temporal or vertex balding. There is moustache and beard. Examination of the eyes reveals irides that appear to be hazel and sclerae that are white. The conjunctivae are not congested. There are no petechial hemorrhages of the sclerae, conjunctivae, or oral mucosae. The oronasal passages are

# AUTOPSY REPORT

No.

2022-00141
ROSENFELD, SCOTT

**12**

Page __2__

unobstructed. There is no foam or foreign material in the nares
or oral cavity. Upper and lower teeth are present and
incomplete. Frenulae and oral mucosa are intact.

There is no chest deformity. There is no increased anterior-
posterior diameter. The abdomen is flat. The genitalia are those
of an adult male. The external genitalia are without trauma or
lesions. The extremities show no edema, joint deformity,
abnormal mobility, non-therapeutic punctures or needle tracts.
There is a healing wound (scab) on the right hand.

**EVIDENCE OF THERAPEUTIC INTERVENTION:**
Evidence of therapeutic intervention include precordial
abrasions. Recent needle punctures are not identified. There has
not been postmortem intervention for organ procurement.

**POSTMORTEM CHANGES:**
Rigor mortis is mild to moderate. Livor mortis is fixed and
posterior.

**DESCRIPTION OF TRAUMATIC INJURY:**
There is no evidence of injury.

**INITIAL INCISION:**
The body cavities are entered through the standard coronal scalp
incision and the standard Y-shaped chest and abdomen incision.

Note: The following observations are limited to findings other
than those described above.

**NECK:**
The neck organs are removed en bloc with the tongue. There is no
edema of the larynx. Both hyoid bone and larynx are intact and
without fractures. No hemorrhage is present in the adjacent
throat organs, investing fascia, strap muscles, thyroid, or
visceral fascia. There are no prevertebral fascial hemorrhages.
The tongue when sectioned shows no trauma.

**CHEST/ABDOMINAL CAVITY:**
There are no pleural effusions or pleural fibrous adhesions.
The parietal pleurae are intact.  Soft tissues of the thoracic
and abdominal walls are well-preserved.  The organs of the

# AUTOPSY REPORT

abdominal cavity have a normal arrangement and none are absent.
Ascites is not present.  The peritoneal cavity is without
peritonitis or adhesions.

### SYSTEMIC AND ORGAN REVIEW:

**MUSCULOSKELETAL SYSTEM:**
No abnormalities of the uninjured bony framework or muscles are
identified.

**CARDIOVASCULAR SYSTEM:**
The thoracic and abdominal aorta have no atherosclerosis.  There
is no tortuosity or widening of the thoracic segment.  There is
no dilation of the lower abdominal segment.  No aneurysm is
present.  The major branches of the aorta show no abnormality.
Within the pericardial sac there is minimal fluid.

The heart weighs 375 grams and has a normal configuration.  The
cardiac silhouette is not globular and the myocardium is not
flabby.  The right ventricle, interventricular septum and left
ventricle measure 0.4 cm, 1.8 cm, and 1.1 cm in thickness,
respectively.  The chambers are normally developed and are
without mural thrombosis.  The valves are thin, leafy, and
competent.  No cardiac valve vegetations are present.  The
tricuspid, pulmonic, mitral and aortic valves measure 13 cm, 8
cm, 10.5 cm, and 7 cm in circumference, respectively.  There is
no endocardial discoloration.  There is no abnormality of the
apices of the papillary musculature.  No infarcts or focal
lesions of the myocardium are identified.  There are no defects
of the septum.  The great vessels enter and leave the heart in a
normal fashion.  The coronary ostia are patent, located at or
below the sinotubular junction, and are relatively centrally
located within their respective sinuses. Serial sectioning of
the coronary arteries shows no atherosclerosis.

**RESPIRATORY SYSTEM:**
Scant secretions are found in the upper respiratory and lower
bronchial passages.  There is no foreign material within the
upper airways or trachea.  The mucosa is intact and pale.  The
right lung weighs 650 grams and the left lung weighs 600 grams.
The pulmonary parenchyma is dark red-purple and the cut surfaces
exude a moderate amount of blood and frothy fluid.  The visceral

# 12

## AUTOPSY REPORT

No.

2022-00141
ROSENFELD, SCOTT

Page __4__

pleurae are smooth and intact.  The pulmonary vasculature is
without thromboembolism.  There is no pulmonary infarct.

**GASTROINTESTINAL SYSTEM:**
The esophagus is intact throughout and without ulcers or
varices.  The stomach contains approximately 5 cc of green
partially digested contents without identifiable food particles
or pill tablets.  The mucosa is unremarkable.  The mucsa of the
small intestine and colon are unremarkable. There is a 2 x 2 cm
calcified mass within the mesentery. The appendix is present and
unremarkable.  The pancreas occupies a normal position and is
brown-tan and lobulated.

**HEPATOBILIARY SYSTEM:**
The liver weighs 2450 grams, and is red-brown.  The capsule is
intact, the parenchyma is soft, and the cut surface is smooth.
There is no evidence of cirrhosis.  The gallbladder has a thin
and pliable wall and contains a moderate amount of bile with no
calculi.

**URINARY SYSTEM:**
Both kidneys weigh 175 grams and are normally situated. The
capsules strip easily revealing a surface that is smooth and
glistening.  The corticomedullary demarcation is preserved.  The
pyramids are not remarkable.  The urinary bladder is unremarkable
and contains approximately 20 cc of urine.

**GENITAL SYSTEM:**
The prostate is not enlarged and is without nodularity.  Both
testes are in the scrotum and are unremarkable and without
trauma.

**HEMOLYMPHATIC SYSTEM:**
The spleen weighs 125 grams.  The capsule is intact.  The
parenchyma is dark red and soft.  There is no increased
follicular pattern.  The bone is not remarkable.  The bone
marrow of the rib is unremarkable.

**ENDOCRINE SYSTEM:**
The thyroid, adrenal, and pituitary glands are unremarkable.
The parathyroid glands are not individually dissected.

# AUTOPSY REPORT

**12**

No.

2022-00141
ROSENFELD, SCOTT

Page  5

**SPECIAL SENSES:**
The eyes are not dissected.  The middle and inner ear are not
dissected.

**HEAD AND CENTRAL NERVOUS SYSTEM:**
There is no subcutaneous, subgaleal, or subperiosteal hemorrhage
in the scalp.  The dura mater is stripped showing no fractures
of the calvarium or base of the skull.  There are no tears of
the dura mater.  There is no epidural, subdural or subarachnoid
hemorrhage.

The brain weighs 1450 grams.  The leptomeninges are thin and
transparent.  A normal convolutionary pattern is observed.
Coronal sectioning demonstrates a uniformity of cortical gray
thickness.  The basal ganglia are intact.  Anatomic landmarks
are preserved.  Cerebral contusions are not present.  The
ventricular system has a normal appearance without dilation or
distortion.  Pons, medulla, and cerebellum are unremarkable.
There is no evidence of uncal or cerebellar herniation.  Vessels
at the base of the brain have a normal pattern of distribution.
There are no aneurysms.  The cerebral arteries are without
arteriosclerosis.

**SPINAL CORD:**
The entire cord is not dissected.  The superior portion of the
cervical cord is examined through the foramen magnum and is
unremarkable.

**EVIDENCE COLLECTION:**
No evidence collected.

**RETAINED TISSUE:**
Representative sections from various organs are preserved in one
storage jar.

**HISTOLOGIC KEY:**
None.

**TOXICOLOGY:**
Heart blood is collected and submitted to the lab as a typing
specimen.  Heart blood, femoral blood, bile, liver tissue, urine,

# AUTOPSY REPORT

No.

2022-00141
ROSENFELD, SCOTT

Page __6__

stomach contents, and vitreous humor are collected and submitted to
the lab.  Toxicology studies are requested.

**SPECIAL PROCEDURES:**
None.

**PHOTOGRAPHY:**
Photographs have been taken prior to and during the autopsy.

**RADIOLOGY:**
Reviewed.

**WITNESSES:**
Detective Mencuri of the Burbank Police Department.

**DIAGRAMS USED:**
Diagram form #20 was used during the performance of the autopsy.
Medical examiner diagrams are not intended to be facsimiles nor
are they drawn to scale.

**SUMMARY & OPINION:**
Per reports, on January 3, 2022, this 48-year-old man, Scott
Rosenfeld, was acting erratically on the property of the extended
stay motel where he was residing. Police officers responded to the
scene and he was taken in to custody and brought to jail. At 0936
hours, he was placed in a detoxification unit where he was
reportedly unable to appropriately communicate. At 1530 hours, he
was released to a private cell. Routine 30-minute checks were
performed. He was noted to develop an appetite and was provided
meals. On January 4, 2022, he was noted to be on his back and
snoring, and at 1035 hours he was noted to be sleeping on his side.
At 1103 hours he was on his back and unresponsive. Emergency
personnel responded and determined death after medical
intervention. No foul play is suspected.

The autopsy demonstrated an appropriately developed adult man with
no traumatic injury. Toxicology studies revealed the presence of
fentanyl, methamphetamine, and amphetamine. Acetone and isopropanol
were detected in the blood. The vitreous glucose level was 480
mg/dL.

# AUTOPSY REPORT

No.

2022-00141
ROSENFELD, SCOTT

**12**

Page __7__

The cause of death is the sequelae of diabetes mellitus. Effects of
fentanyl and methamphetamine are listed under contributing
conditions. At the time of this report, based on the history and
circumstances as I currently know them, in conjunction with autopsy
examination and ancillary findings, the manner of death is
accident.

_____          _____5/11/2022_____
Richard Ou, M.D.                          Date
Deputy Medical Examiner

**COUNTY OF LOS ANGELES**                                    **DEPARTMENT OF MEDICAL EXAMINER-CORONER**



**20**

4: abr
F: scav

hair: grey
eyes: hazel
    no congl pd
mouth: not teeth
    incomplete
moustache + beard
    1/2 × 1/2 in
rigor mild - med
livor fixed, post

R    L          L    R

male
no trauma

healing wound
(scab)
1/4 × 1/4 in

no trauma

coroner ID
2022-00141

coroner ID
2022-00141

**Right Thumbprint**          X

Date  1/5/2022

R----

                              _____ M.D.
                              **Deputy Medical Examiner**

Rev. 9/17

## 16

**EXTERNAL EXAM**
- Sex
- Race
- Age
- Height
- Weight
- Hair
- Eyes
- Sclera
- Teeth
- Mouth
- Tongue
- Nose
- Chest
- Breasts
- Abdomen
- Scar
- Genitals
- Edema
- Skin
- Decubitus

**HEART Wt.** 375
- Pericardium          RV 0.4
- Hypertrophy         Septum 1.8
- Dilation               LV 1.1
- Muscle                Septum
- Valves
- Coronaries  0%.

T 13
P 8
M 10.5
A 7

**AORTA**
**VESSELS**
**LUNGS Wt.**
- R 650
- L 600
- Adhesions
- Fluid
- Atelectasis
- Oedema
- Congestion
- Consolidation
- Bronchi
- Nodes

**PHARYNX**
**TRACHEA**
**THYROID**
**THYMUS**
**LARYNX**
**HYOID**
**ABDOMINAL WALL FAT**

**PERITONEUM**
- Fluid
- Adhesions

**LIVER Wt.** 2450
- Capsule
- Lobules
- Fibros
- G B pros, med
- Calculus
- Bile ducts

**SPLEEN Wt.** 125
- Color
- Consistency
- Capsule
- Malpigment

**PANCREAS**
**ADRENALS**
**KIDNEYS Wt.**
- R 175
- L 175
- Capsule
- Cortex
- Vessels
- Pelvis
- Ureters

**BLADDER** 20cc urine
**GENITALIA**
- Prostate  >unv
- Testes
- Uterus
- Tubes
- Ovaries

**OESOPHAGUS**
**STOMACH** see green card
- Contents

**DUOD. & SM. INT.**    mesentric
**APPENDIX** pnes    2x2 cm
**LARGE INT.**    calcified mass
**ABDOM. NODES**
**SKELETON**
- Spine
- Marrow
- Rib Cage
- Long bones
- Pelvis

**SCALP**
**CALVARIUM**
**BRAIN Wt.** 1450
- Dura
- Fluid
- Ventricles
- Vessels
- Middle ears
- Other

**PITUITARY**

**SPINAL CORD**

**TOXICOLOGY SPECIMENS**

**SECTIONS FOR**
**HISTOPATHOLOGY**

**MICROBIOLOGY**

**DIAGRAMS**
**X-RAYS**

**OTHER PROCEDURES**

**GROSS IMPRESSIONS**

| Date | Time | Deputy Medical Examiner |
|------|------|------------------------|
| 1/5/2022 | 1200 - 1315 | |

**15**

AUTOPSY CLASS: ☒ A  ☐ B  ☐ C  ☐ Examination Only D

☐ FAMILY OBJECTION TO AUTOPSY

Date: 1/5/22  Time: 1260  Dr. ___Ou___
(Print)

FINAL ON: 5/11/22  By: ___Ou___
(Print)

DEATH WAS CAUSED BY: (Enter only one cause per line for A, B, C, and D)

**IMMEDIATE CAUSE:**

(A) Sequelae of diabetes mellitus ◄ unk

DUE TO, OR AS A CONSEQUENCE OF:

(B) ◄

DUE TO, OR AS A CONSEQUENCE OF:

(C) ◄

DUE TO, OR AS A CONSEQUENCE OF:

(D) ◄

OTHER CONDITIONS CONTRIBUTING BUT NOT RELATED TO THE IMMEDIATE CAUSE OF DEATH:

effects of fentanyl and methamphetamine

☐ **NATURAL**      ☐ **SUICIDE**      ☐ **HOMICIDE**

☒ **ACCIDENT**      ☐ **COULD NOT BE DETERMINED**

*If other than natural causes,*
HOW DID INJURY OCCUR? drug use

WAS OPERATION PERFORMED FOR ANY CONDITION STATED ABOVE: ☐ YES ☐ NO

TYPE OF SURGERY: _____ DATE: _____

☐ ORGAN PROCUREMENT  ☒ TECHNICIAN: M Fernandez

PREGNANCY IN LAST YEAR  ☐ YES  ☐ NO  ☐ UNK  ☒ NOT APPLICABLE

☒ WITNESS TO AUTOPSY  ☐ EVIDENCE RECOVERED AT AUTOPSY
Item Description:

Det Menuvi

in custody

itox ⊕ fent

---

APPROXI-MATE INTERVAL BETWEEN ONSET AND DEATH

Age: 48   Gender: (Male) / Female

**PRIOR EXAMINATION REVIEW BY DME**

☒ BODY TAG            ☐ CLOTHING
☒ X-RAY (No. CT    )   ☐ FLUORO
☐ SPECIAL PROCESSING TAG  ☐ MED. RECORDS
☒ AT SCENE PHOTOS (No. _____ )

**CASE CIRCUMSTANCES**

☐ EMBALMED
☐ DECOMPOSED
☐ >24 HRS IN HOSPITAL
☐ OTHER: _____ (Reason)

**TYPING SPECIMEN**

TYPING SPECIMEN TAKEN BY: Ou

SOURCE: heart blood

**TOXICOLOGY SPECIMEN**

COLLECTED BY: Ou
☒ HEART BLOOD          ☒ STOMACH CONTENTS
☒ FEMORAL BLOOD        ☒ VITREOUS
TECHNIQUE: EP

☐ _____ BLOOD  ☐ SPLEEN
☐ _____ BLOOD  ☐ KIDNEY
☒ BILE                 ☐ _____
☒ LIVER                ☐ _____
☒ URINE                ☐ _____

URINE GLUCOSE DIPSTICK RESULT:  4+  3+  2+  1+  0

TOX SPECIMEN RECONCILIATION BY: _____

**HISTOLOGY**

☒ Regular (No. _____ )  ☐ Oversize (No. _____ )
Histopath Cut: ☐ Autopsy ☐ Lab

**TOXICOLOGY REQUESTS**

FORM 3A: ☐ YES ☐ NO
☐ NO TOXICOLOGY REQUESTED
SCREEN ☒ C ☐ H ☐ T ☐ S ☐ D
☐ ALCOHOL ONLY
☐ CARBON MONOXIDE
☐ OTHER (Specify drug and tissue)
_____
_____
_____
_____

**REQUESTED MATERIAL ON PENDING CASES**

☒ POLICE REPORT       ☐ MED HISTORY
☒ TOX FOR COD         ☐ HISTOLOGY
☐ TOX FOR R/O         ☐ INVESTIGATIONS
☐ MICROBIOLOGY        ☐ EYE PATH. CONS.
☐ RADIOLOGY CONS.
☐ CONSULT ON: _____
☐ BRAIN SUBMITTED
   ☐ NEURO CONSULT  ☐ DME TO CUT
☐ CRIMINALISTICS
☐ GSR  ☐ SEXUAL ASSAULT  ☐ OTHER

RESIDENT _____    DME _____



Department of Medical Examiner-Coroner, County of Los Angeles

# FORENSIC SCIENCE LABORATORIES

1104 North Mission Road, Los Angeles, CA 90033

## Laboratory Analysis Summary Report



### Ou, Richard M.D.

Deputy Medical Examiner
1104 North Mission Road
Los Angeles, CA 90033

☑ **PendingTox**

**Coroner Case Number:** 2022-00141    **Decedent:** ROSENFELD, SCOTT

| SPECIMEN | SERVICE | DRUG | RESULT | ANALYST |
|---|---|---|---|---|

### Alcohol Quantitation/Confirmation

Blood, Femoral

| | Alcohol-GC/FID-HS | Ethanol | Negative | C. Castellino |
|---|---|---|---|---|

Blood, Heart

| | Alcohol-GC/FID-HS | Ethanol | Negative | E. Fu |
|---|---|---|---|---|

### Drug Screen

Blood, Heart

| | | | | |
|---|---|---|---|---|
| | ELISA-Immunoassay | Benzodiazepines | PP | J. Posada |
| | ELISA-Immunoassay | Cocaine and Metabolites | ND | J. Posada |
| | ELISA-Immunoassay | Fentanyl | PP | J. Posada |
| | ELISA-Immunoassay | Marijuana:11-nor-Delta-9-Carboxy-THC | ND | J. Posada |
| | ELISA-Immunoassay | Methamphetamine & MDMA | PP | J. Posada |
| | ELISA-Immunoassay | Opiates: Codeine & Morphine | ND | J. Posada |
| | ELISA-Immunoassay | Opiates: Hydrocodone & Hydromorphone | ND | J. Posada |
| | ELISA-Immunoassay | Phencyclidine | ND | J. Posada |

### Drug Screen/Confirmation

Blood, Femoral

| | | | | |
|---|---|---|---|---|
| | Fentanyl-GC/MS | Fentanyl | 52 ng/mL | R. Cabrera |
| | Vols-GC/FID-HS &/or MS | Acetone | 0.047 g% | C. Castellino |
| | Vols-GC/FID-HS &/or MS | Isopropanol | ND | C. Castellino |

Blood, Heart

| | | | | |
|---|---|---|---|---|
| | Bases-GC/NPD &/or MS | Basic Drugs | ND | A. Chavez |
| | Benzos (Free)-LC/MS | Benzodiazepines | ND | M. Liebl |
| | Sympath. Amines-GC/MS | Amphetamine | 0.02 ug/mL | D. Van Cleve |
| | Sympath. Amines-GC/MS | Ephedrine | ND | D. Van Cleve |
| | Sympath. Amines-GC/MS | Methamphetamine | 0.05 ug/mL | D. Van Cleve |
| | Sympath. Amines-GC/MS | Methylenedioxyamphetamine (MDA) | ND | D. Van Cleve |
| | Sympath. Amines-GC/MS | Methylenedioxymethamphetamine (MDMA) | ND | D. Van Cleve |

Ro 5|11|22

**Coroner Case Number:** 2022-00141    **Decedent:** ROSENFELD, SCOTT

| SPECIMEN | SERVICE | DRUG | RESULT | ANALYST |
|----------|---------|------|--------|---------|
| | Sympath. Amines-GC/MS | Pseudoephedrine | ND | D. Van Cleve |
| | Vols-GC/FID-HS &/or MS | Acetone | 0.053  g% | E. Fu |
| | Vols-GC/FID-HS &/or MS | Isopropanol | 0.012  g% | E. Fu |
| Vitreous | | | | |
| | iSTAT | Electrolytes and Glucose | Done | M. Rodriguez |

**Legend:**

| | | | | | | |
|---|---|---|---|---|---|---|
| | | ND | Not Detected | SNS | Specimen Not Suitable | |
| g | Grams | ng/g | Nanograms per Gram | TNP | Test Not Performed | |
| g% | Gram Percent | ng/mL | Nanograms per Milliliter | ug | Micrograms | |
| Inc. | Inconclusive | PP | Presumptive Positive | ug/g | Micrograms per Gram | |
| mg | Milligrams | QNS | Quantity Not Sufficient | ug/mL | Micrograms per Milliliter | |

The alcohol analysis was performed in accordance to California Code of Regulations "Title 17" compliance by a qualified analyst in the Forensic Toxicology Laboratory, Forensic Laboratories Division, County of Los Angeles Department of Medical Examiner - Coroner.

Enzyme-linked immunosorbant assay (ELISA) provides only a preliminary analytical result that is contingent upon a confirmatory test. A "presumptive positive" (PP) signifies a detection of a drug class and must be confirmed by additional testing for true identification and/or quantitation of specific drug(s) present in the specimen.

Per the Department's Evidence Retention Policy, the blood specimen(s) will be retained for one year (minimum) and all other specimens six months (minimum) from Postmortem Exam.

**Final Review By:**    Sarah Buxton de Quintana    **Date:** 5/6/22
Supervising Criminalist I

*The above results relate only to the items sampled and tested and have been technically and administratively reviewed and are the opinions and conclusions of the analysts noted. The final review has been certified by the noted Toxicologist to ensure that all standard operating procedures were followed as set by the Forensic Toxicology Laboratory, Forensic Sciences Laboratory Division, County of Los Angeles Department of Medical Examiner-Coroner.*

Home
1104 N. Mission Road, Los Angeles, CA 90033

Ph: 323–343–0530

Fax: –

# Patient Test Result Report

| | | | | |
|---|---|---|---|---|
| **Patient Name:** | – | **Patient ID:** | 2022.00141 | |
| **Gender:** | – | **Test Time:** | 04/12/2022 01:40 PM | |
| **DOB:** | – | **Operator ID:** | 4 | |
| **Specimen Type:** | OTHR | **Panel:** | CHEM8+ | |
| **Device Model:** | i-STAT1 | **Device Serial No:** | 373835 | |
| **Upload Time:** | 04/13/2022 02:06 PM | **Transfer Time:** | – | |
| **Instrument Comment:** | – | | | |

*041222 MRS*

| Test | Flag | Result | Unit | Reference Range | |
|---|---|---|---|---|---|
| Na | | 173 | mmol/L | 138 – 146 | *173* |
| K | H | >9.0 | mmol/L | 3.5 – 4.900 | *>9.0* |
| Cl | H | >140 | mmol/L | 98 – 109 | *>140* |
| BUN | | 76 | mg/dL | 8 – 26 | *76* |
| Crea | | 2.1 | mg/dL | 0.600 – 1.299 | *2.1* |
| Glu | | 480 | mg/dL | 70 – 105 | *480* |

Total number of records:   1

**Report Created By:**

sdq

**Signature:**

*Marisol Rodriguez 04/13/22*

COPY

BY: *MRS* DATE: *04/15/22*

*LA CORONER LABORATORY*
*OK to Release*
*MRS 04/13/22*

*MRS 04/13/22*

**CASE REPORT**

COUNTY OF LOS ANGELES

DEPARTMENT OF CORONER

# 1

| APPARENT MODE | | CASE NO |
|---|---|---|
| **UNDETERMINED** | | 2022-00141 |
| SPECIAL CIRCUMSTANCES | | CRYPT |
| In Custody | | 175 |

| LAST, FIRST MIDDLE | | AKA | | | # |
|---|---|---|---|---|---|
| **ROSENFELD, SCOTT** | | **SCOTT VINCENT ROS** | | | |

| ADDRESS | | | | | | CITY | | STATE | ZIP |
|---|---|---|---|---|---|---|---|---|---|
| EXTENDED STAY AMERICA 2200 EMPIRE AVENUE | | | | | | BURBANK | | CA | 91504 |

| SEX | RACE APPEARS | DOB | AGE | HGT | WGT | EYES | HAIR | TEETH | FACIAL HAIR | ID VIEW | CONDITION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MALE | CAUCASIAN | 11/3/1973 | 48 | 73 in. | 175 lbs. | HAZEL | GRAY | INCOMPLETE | BEARD AND MUSTACHE | Yes | FAIR |

| MARK TYPE | MARK LOCATION | MARK DESCRIPTION |
|---|---|---|
| | | |

| NOK | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|
| JOYCE MARIE GLASS | 10212 OWEN BORWN ROAD | COLUMBIA | MD | 21044 |

| RELATIONSHIP | PHONE | NOTIFIED BY | DATE | TIME |
|---|---|---|---|---|
| MOTHER | (443) 416-3552 | KARINA PECK | 1/6/2022 | 10:24 |

| SSN | DL ID | STATE | PENDING BY |
|---|---|---|---|
| XXXX - XX - 1242 | D9502176 | CA | |

| ID METHOD |
|---|
| FINGERPRINTS |

| LA # | MAIN # | CII # | FBI # | MILITARY # | POB |
|---|---|---|---|---|---|
| | 32905863 | A29288508 | 105161EC3 | | CALIFORNIA |

| IDENTIFIED BY NAME (PRINT) | RELATIONSHIP | PHONE | DATE | TIME |
|---|---|---|---|---|
| LACRIS/DOJ/FBI | | | 1/4/2022 | 18:27 |

| PLACE OF DEATH / PLACE FOUND | ADDRESS OR LOCATION | CITY | ZIP |
|---|---|---|---|
| JAIL | 200 NORTH 3RD STREET | BURBANK | 91502 |

| PLACE OF INJURY | AT WORK | DATE | TIME | LOCATION OR ADDRESS | ZIP |
|---|---|---|---|---|---|
| MOTEL | No | 1/3/2022 | | EXTENDED STAY AMERICA 2200 EMPIRE AVENUE, BUR BANK, CA | 91504 |

| DOD | TIME | FOUND OR PRONOUNCED BY |
|---|---|---|
| 1/4/2022 | 11:33 | BFD ENG 11 RAMOS/MUNDELL |

| OTHER AGENCY INV. OFFICER | PHONE | REPORT NO. | NOTIFIED BY | NO |
|---|---|---|---|---|
| BURBANK P.D. - DET MENCURI 12307 | (818) 238-3244 | 22-99 | | |

| TRANSPORTED BY | TO | DATE | TIME |
|---|---|---|---|
| FRANCISCO NGAYAN | LOS ANGELES FSC | 1/4/2022 | 17:45 |

| FINGERPRINTS? | Yes | CLOTHING | No | PA RPT | No | MORTUARY | |
|---|---|---|---|---|---|---|---|
| MED. EV. | No | INVEST. PHOTO # | 35 | SEAL TYPE | NOT SEALED | HOSP RPT | No |
| PHYS. EV. | Yes | EVIDENCE LOG | Yes | PROPERTY? | No | HOSP CHART | No |
| SUICIDE NOTE | No | GSR NO | | RCPT. NO. | 333797 | PF NO. | |

SYNOPSIS

THE DECEDENT IS A 48-YEAR-OLD CAUCASIAN MALE WHO WAS ACTING ERRATICALLY WITH NO SHOES OR SHIRT ON THE PROPERTY OF THE EXTENDED STAY MOTEL WHERE HE WAS RESIDING ON 01/03/2022. 911 WAS CALLED. OFFICERS FROM BURBANK POLICE DEPARTMENT RESPONDED TO THE SCENE. IT WAS DETERMINED THAT HE WAS UNDER THE INFLUENCE OF SUSPECTED STIMULANTS. HE WAS SUBSEQUENTLY TAKEN INTO CUSTODY AT 0915 HOURS AND TRANSPORTED TO THE BURBANK JAIL. HIS TEMPERATURE WAS 97.7 DEGREES FAHRENHEIT. HE WAS PLACED IN A DETOXIFICATION UNIT AT 0936 HOURS AND WAS UNABLE TO APPROPRIATELY COMMUNICATE DUE TO INTOXICATION. HE WAS INCOHERENT, LOUD, BELLIGERENT, UNCOOPERATIVE, STAGGERING, SWAYING, CONFUSED, UNSTEADY WITH POOR DEXTERITY, BODY TREMORS AND HIS EYES WERE CONSTRICTED. AT 1530 HOURS, HE WAS DEEMED ALRIGHT TO BE RELEASED TO A PRIVATE CELL. ROUTINE HALF HOUR CHECKS WERE PERFORMED THROUGHOUT HIS STAY. HE DEVELOPED AN APPETITE AND WAS PROVIDED MEALS. ON 01/04/2021, HE REPORTED BEING HOT AND REMOVED HIS CLOTHES AND KICKED OFF THE BLANKET. HE WAS NOTED TO BE SNORING ON HIS BACK, THEN AT 1035 HOURS SLEEPING ON HIS SIDE. AT 1103 HOURS, HE WAS ON HIS BACK AND UNRESPONSIVE. PARAMEDICS FROM BURBANK FIRE DEPARTMENT RA 11 WERE DISPATCHED AND ARRIVED AT SCENE. DESPITE ALL LIFESAVING EFFORTS FOR A SIGNIFICANT AMOUNT OF TIME, HE WAS ULTIMATELY PRONOUNCED AT 1133 HOURS. NO OTHER MEDICAL HISTORY WAS KNOWN OTHER THAN CONTROLLED SUBSTANCE ABUSE. THERE ARE NO EXTERNAL SIGNS OF TRAUMA AND FOUL PLAY IS NOT SUSPECTED.

| KARINA PECK | | DATE | 1/4/2022 | REVIEWED BY | DATE | 9/1/22 |
|---|---|---|---|---|---|---|
| 527141 | | TIME | 18:25 | VANANDA CHOLAKIA | TIME | 00:19 |
| | INVESTIGATOR | | | | | |

FORM #3 NARRATIVE TO FOLLOW? ☑

## County of Los Angeles, Department of Coroner
## Investigator's Narrative

Case Number:  2022-00141                      Decedent: ROSENFELD, SCOTT

### Information Sources:

(1)     Burbank Police Department                                    (818) 238-3244
        Detective Mencuri #12307
        Report Number 22-99

### Investigation:

On 01/04/2022 at 1302 hours, Detective Mencuri #12307 from Burbank Police Department called the Los Angeles County Medical Examiner-Coroner's Office to report an undetermined in-custody death of a 48-year-old Caucasian male who was arrested for being under the influence of a suspected controlled stimulant on 01/03/2022. He was housed at Burbank Jail. During routine checks the following day he was found unresponsive in his cell. On 01/04/2022 at 1335 hours, Lieutenant Brian Kim assigned this case to me. I left the Forensic Science Center at 1400 hours and arrived on scene at 1418 hours. I cleared the scene at 1723 hours. Forensic Attendant Frank Ngayan transported the decedent from the scene to the Decedent Services Unit on 01/04/2022 arriving at 1745 hours. No external trauma was noted and there are no signs of foul play.

### Location:

The incident occurred at Extended Stay of America Motel located at 2200 Empire Avenue, Burbank, CA 91504 and he was transported to Burbank Jail located at 200 North 3rd Street, Burbank, CA 91502 where he was pronounced.

### Informant/Witness Statements:

This preliminary information is subject to change.

According to the reported information, the decedent is a 48-year-old Caucasian male who was acting erratically with no shoes or shirt on the property of the extended stay motel where he was residing on 01/03/2022. 911 was called. Officers from Burbank Police Department responded to the scene. It was determined that he was under the influence of suspected stimulants. He was subsequently taken into custody at 0915 hours and transported to the Burbank Jail. His temperature was 97.7 degrees Fahrenheit. He was placed in a detoxification unit at 0936 hours and was unable to appropriately communicate due to intoxication. He was incoherent, loud, belligerent, uncooperative, staggering, swaying, confused, unsteady with poor dexterity, body tremors and his eyes were constricted. At 1530 hours, he was deemed alright to be released to a private cell. Routine half hour checks were performed throughout his stay. He developed an appetite and was provided meals. On 01/04/2021, he reported being hot and removed his clothes and kicked off the blanket. He was noted to be snoring on his back, then at 1035 hours sleeping on his side. At 1103 hours, he was on his back and unresponsive. Paramedics from Burbank Fire Department RA 11 were dispatched and arrived at scene. Despite all lifesaving efforts for a significant amount of time, he was ultimately pronounced at 1133 hours. No other medical history was known other than controlled substance abuse. There are no external signs of trauma and foul play is not suspected.

### Scene Description:

The incident occurred in the decedent's north-facing cell room labeled "CELL2". Unopened food and a drink were on the tray of the door. The decedent was directly in front of the entry. Medical supplies and an ID band were around his body. A green bunk mattress with a sheet and grey underwear were between the decedent and the east wall. A phone was on the wall followed by the two bunk beds, a dividing wall, the sink, metal "mirror" and the toilet. A blue blanket, food products and trash were under the bottom bunk. A towel and Ambu Spur II bag were on the bottom bunk. A bag of discarded medical supplies and Narcan boxes were on the top bunk. Lunchmeat and an unknown food product were on the wall. Bread and trash were in



**County of Los Angeles, Department of Coroner Investigator's Narrative**

Case Number:  2022-00141                    Decedent: ROSENFELD, SCOTT

the sink.  Urine was in the toilet.  The other green bunk mat was on the floor by the bottom bunk and into the restroom area.

## Evidence:

On 01/04/2022 at 1443 hours, I collected fingernail kit evidence.  On 01/04/2022 at 1448 hours, I collected hair exemplar kit evidence.  I later booked the evidence at the Forensic Science Center.

## Body Examination:

The decedent is a 48-year-old Caucasian male with a shaved head and hazel eyes.  He has a goatee and incomplete natural teeth.  He was originally found on his bunk bed and moved to the floor for resuscitative efforts.  He was lying supine on the concrete floor when I examined him at the scene.  His head was resting on a folded blanket.  The top of his head was pointed to the south.  His right arm was straight along a few inches from his side with his hand pointed to the north.  His left arm was partially bent at the elbow with his hand next to his left hip.  His legs were straight with his heels together and his feet pointed to the north.  He had AED pads at his upper right chest and left side.  The sensor had been at the center chest and was hanging off to his right side.  An intraosseous catheter was in place at the left tibia.  He has red discoloration at the center chest from resuscitative efforts.  He had brownish-red purge emanating from his mouth.  No external trauma is noted.  No scars or tattoos were noted.  Rigor was a 3-4 throughout his body.  Lividity was consistent with the position in which he was found and blanched easily with minimal pressure.

## Identification:

On 01/04/2022  at 1827 hours, the Los Angeles County Regional Identification System positively identified the decedent as Scott Rosenfeld with a DOB of 11/03/1973 by his fingerprints through Live Scan.  On 01/04/2022 at 1831 hours, the Department of Justice confirmed the identity of the decedent with the same name and DOB by his fingerprints through Live Scan.  On 01/04/2022 at 1834 hours, the Federal Bureau of Investigation confirmed the identity of the decedent with the same name and DOB by his fingerprints through Live Scan.  The decedent's California Department of Motor Vehicles driver license has the name Scott Victor Rosenfeld and the same DOB.

## Next of Kin Notification:

On 01/06/2021 at 1125 hours, I notified the decedent's mother, Joyce Glass, of the death.

## Tissue Donation:

I did not discuss organ or tissue donation with the family due to the amount of time elapsed from when he was pronounced and to preserve the integrity of the investigation.

## Exam Notification:

Detective Mencuri requires 2-hour notification prior to post examination.  Please see case notes for contact information.

KARINA PECK #527141                              SUPERVISOR

**County of Los Angeles, Department of Coroner**
**Investigator's Narrative**

Case Number:  2022-00141                    Decedent:  ROSENFELD, SCOTT

01/06/2022

Date of Report



# TRANSPORT DRIVER MESSAGE

COUNTY OF LOS ANGELES
MEDICAL EXAMINER-CORONER



| | |
|---|---|
| **Coroner Case Number:** | 2022-00141 |
| **Incoming Mode:** | UNDETERMINED |
| **Decedent Name:** | ROSENFELD, SCOTT VINCENT |
| **Decedent Age:** | 48 |
| **Decedent Birth Date:** | 11/03/1973 |
| **Sex:** | MALE |
| **Race:** | CAUCASIAN |
| **Date and Time of Death:** | 01/04/2022 11:33 |
| **Death Place:** | JAIL |
| **Hospital Name:** | |
| **Death Address:** | 200 N 3RD ST |
| **Death City:** | BURBANK |
| **Death Zip:** | 91502 |
| **Police Agency:** | BURBANK P.D. |
| **Describe Terminal Episode:** | DECD WAS ARRESTED FOR BEING UNDER THE INFLUENCE WAS HOUSED IN BURBANK JAIL DURING HOURLY CHECKS WAS DISCOVERED UNRESPONSIVE. NFI |
| **Special Handling Information:** | HT 6'0 WT 225 LBS PARK IN TURNOUT PARKING AREA IN FRONT OF JAIL SIGN ON 3RD ST, CROSS ST ORANGE GROVE AVE. |
| **NOK Name:** | UNKNOWN |
| **Investigator's Name:** | KARINA PECK |
| **Date and Time of Call:** | 01/04/2022  13:02 |
| **Transport Driver Name:** | FRANCISCO NGAYAN |
| **Date and Time Transport Assigned:** | 01/04/2022  15:12 |

EVIDENCE LOG

## ALL UPPER SECTIONS MUST BE FILLED IN

FINAL MODE:

2022- **00141**

DECEDENT NAME:
ROSENFELD, SCOTT

AGENCY: BURBANK P.D.
818-238-3244

| INCOMING MOD: ✓all that apply | Special Processing Cases | ▶ | ☐ Homicide | ☐ Undetermined | ☐ H/R | ☐ Auto vs Ped/Cyclist | ☐ I.C. / LER / OIS | AGENCY CASE #: 22-99 |
| | | | ☑ Natural | ☒ Accident | | ☐ Suicide | HANDLING OFFICER's NAME AND BADGE # DET. MENCURI #12307 |

| EVIDENCE COLLECTED | | | | RECEIVED IN EVIDENCE UNIT | | | EVIDENCE RELEASED... | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Item Description | By | Date | Time | By | Date | Time | To | Badge # | Agency | By | Date | Time |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Projectile Envelope | | | | | | | | | | | | |
| Hair Kit | PECK | 01/04/22 | 1448 | | | | | | | | | |
| Fingernail Kit | PECK | 01/04/22 | 1443 | | | | | | | | | |
| Bloodstain card | | | | | | | | | | | | |
| GSR Kit | | | | | | | | | | | | |
| Medical Evidence | | | | | | | | | | | | |

CODES: BPB = Brown Paper Bag    PB = Plastic Bag    ∞ = packaged together

BPB/PB Clothing = All of the above items have been sealed into a single BPB/PB except any above listed items that were released prior to the date/time of "received into evidence"

(Rev. 9/2019)

**2**

**PERSONAL EFFECTS INVENTORY**

1104 North Mission Road, Los Angeles, CA 90033  (213) 343-0515

Property Released — Monday through Friday 8:00 AM to 4:00 PM
Closed Saturday, Sunday & Holidays

☐ NO PERSONAL EFFECTS TAKEN   ☒ NO CASH TAKEN

☐ ADDITIONAL RECEIPTS # _____ 0

No. 33379 ;
Date 01-04-2022
Case # 2022-00141
Name ROSENFELD
SCOTT VINCENT

**PERSONAL EFFECTS:**  U.S. Cash _____ 0 _____ Dollars

Keepsake/Foreign Monies _____

| Item | No | Yes | Qty. | Description | To: Notif | Item | No | Yes | Qty. | Number | To: Notif |
|------|----|----|------|-------------|-----------|------|----|----|------|--------|-----------|
| Wallet | | | | | | Driver's License | | | | | |
| Purse | | | | | | Soc. Security | | | | | |
| Misc. Papers | | | | | | Passport | | | | | |
| Address | | | | | | Military I.D./Vet. Card | | | | | |
| Suicide Note | | | | | | Immig. Card | | | | | |
| Glasses | | | | | | P.F. Card | | | | | |
| Keys | | | | | | Blank Checks | ✓ | | | | |

The following Identification documents are routinely returned to the issuing agencies: California Driver's Licenses, California Identification Cards, Immigration Cards, Passports and Military I.D. Cards.

| Watches, Jewelry & Other Items | Credit Cards, Traveler's Checks and Checks for Decedent (List bank acct. nos., amount, card name and no.) |
|---|---|
| | |
| | |
| | |
| | |
| | |

**DECLARATION FOR RELEASE OF WEAPONS IN THE FIELD:**
The Dept. of Coroner does not accept firearms. The following *(describe)* _____ caliber ___ make ___ model ___ type

Weapon bearing serial number _____ was released to: _____ name ___ badge/I.D.#

Name of Agency: _____ Phone Number ( ) _____

Address: _____

**WITNESS DECLARATION:**   UNDER PENALTY OF PERJURY, I DECLARE:
☒ The above list is all the property found on the body, clothing or adjacent area to the above named decedent and was checked by me in the presence of the witnesses signed below.
☒ Above is listed all the property of the above indicated decedent after the body, clothing or adjacent area had been checked prior to my arrival.

Signature _____ Print Name & Title K. PEOR #527141
Witness Sign _____ Print Name & Title MENCUR1 #12307
Address & Agency _____ City _____ ZIP _____ Phone ( ) _____
Witness Sign _____ Print Name & Title _____
Address & Agency _____ City _____ ZIP _____ Phone ( ) _____

**DECLARATION FOR RELEASE OF PROPERTY IN THE FIELD:**
The above indicated personal effects were released to me by _____ Date _____

Signature _____ Print Name & Title _____

Agency _____ Phone ( ) _____

**DECLARATION FOR RELEASE OF PROPERTY TO FAMILY:**
The above listed property was delivered to me by _____ of the Property Section of the Dept. of Coroner, Los Angeles County.

Signature _____ Print Name _____

Relationship _____ Date _____ Phone ( ) _____

Address _____ City _____ ZIP _____

**PROPERTY WILL NOT BE RELEASED WITHOUT AFFIDAVIT PURSUANT TO SECTION 630 PROBATE CODE OR LETTERS TESTAMENTARY.**

REV. 10/13

COUNTY OF LOS ANGELES | ORDER FOR RELEASE – ORDEN DE ENTREGA | DEPARTMENT OF MEDICAL EXAMINER-CORONER

### Please read and answer all questions before signing

|  | Yes | No |
|---|---|---|
| Was the decedent legally married at the time of death? | | ✓ |
| Does the decedent have any living adult children? | ✓ | |
| Does the decedent have any living minor children? | | ✓ |
| Does the decedent have any living parents? | ✓ | |

Case No. 2022-00141
Case Name
ROSENFELD, Scott Vincent

### Favor de leer y contestar todas las preguntas antes de firmar

|  | SI | NO |
|---|---|---|
| ¿El difunto ha sido casado legalmente? | | |
| ¿El difunto tiene hijos adultos? | | |
| ¿El difunto tiene hijos menores de edad vivientes? | | |
| ¿El difunto tiene padres vivientes? | | |

## HEALTH AND SAFETY CODE · § 7100 · CUSTODY AND DUTY OF INTERMENT

"WARNING: The person signing this Order for Release is liable for all damages caused by any untruthful statements contained in this document. (Health and Safety Code Section 7110). It is also a criminal offense to knowingly file a false statement with a government agency. (Penal Code Section 115 and 470)"

The right to control the disposition of the remains of a deceased person unless other directions have been given by the decedent pursuant to Section 7100.1, vests in, and the duty of disposition and the liability for the reasonable cost of disposition of the remains devolves upon, the following in the order named: (1) An agent under a power of attorney for health care who has the right and duty of disposition under Division 4.7 (commencing with Section 4600) of the Probate Code; (2) The competent surviving spouse; (3) The sole surviving competent adult child of the decedent or, if there is more than one competent adult child of the decedent, the majority of the surviving competent adult children. (4) The surviving competent parent or parents of the decedent. If one of the surviving competent parents is absent, the remaining competent parent shall be vested with the rights and duties of this section after reasonable efforts have been unsuccessful in locating the absent surviving competent parent. (5) The sole surviving competent adult sibling of the decedent or, if there is more than one surviving competent adult sibling of the decedent, the majority of the surviving competent adult siblings. (6) The surviving competent adult person or persons respectively in the next degrees of kinship; (7) A conservator of the person or estate appointed under Part 3 (commencing with Section 1800) of Division 4 of the Probate Code when the decedent has sufficient assets. (8) The public administrator when the deceased has sufficient assets.

Therefore, please release the body upon completion of your death investigation of said deceased to:

Valley Funeral Home
NAME OF MORTUARY

| Joyce Glass | Mother | DocuSigned by: Joyce Glass |
|---|---|---|
| NAME OF NEXT-OF-KIN (PLEASE PRINT LEGIBLY) | RELATIONSHIP | NEXT-OF-KIN SIGNATURE |

| 10212 Owen Brown RD., Columbia MD 21044 | | 1/14/2022 | 5:27 PM EST |
|---|---|---|
| ADDRESS    CITY    STATE    ZIP CODE | TELEPHONE NUMBER | DATE SIGNED |

IF THE LEGAL NEXT-OF-KIN IS NOT HANDLING, PLEASE ENTER NEXT-OF-KIN INFORMATION BELOW AND EXPLAIN WHY THEY ARE NOT HANDLING. ATTACH SUPPORTING AUTHORIZATION DOCUMENTS, E.G. WILLS, POWER OF ATTORNEY, FAXES, ETC.

| | | | |
|---|---|---|---|
| NAME | RELATIONSHIP | ADDRESS / CITY / STATE / ZIP CODE | TELEPHONE NUMBER |

## CÓDIGO SALUD Y SEGURIDAD · § 7100 · CUSTODIA Y OBLIGACIÓN DE ENTERRO

"AVISO: La persona que firma este documento será responsable de su contenido y responderá por cualquier daño(s) producto de cualquier información falsa contenida en el mismo. (Sección 7110 Del Código De Salud y Seguridad) Además, es una ofensa criminal proveer información falsa a propósito a una entidad del gobierno. Código Penal Sección 115 y 470"

El derecho a controlar la disposición de los restos de una persona fallecida, el deber de la disposición y la responsabilidad por el costo razonable de la disposición corresponde a los siguientes en el orden indicado abajo, a menos que otras direcciones hayan sido dadas por el difunto de acuerdo con la Sección 7100. 1, y (1) Un agente con un poder notarial para decisiones de la salud, el cual tiene el derecho y el deber de la disposición conforme a la División 4.7 (comenzando con la Sección 4800) del Código de Sucesiones; (2) El cónyuge sobreviviente competente; (3) El único hijo sobreviviente adulto competente del difunto o, si hay más de un hijo adulto competente, el consenso de la mayoría de los hijos adultos sobrevivientes competentes. (4) El padre o madre sobreviviente competente o a los padres del difunto. Si uno de los padres competentes sobrevivientes está ausente, el padre competente presente se le concederá a los derechos y deberes de esta sección siempre y cuando esfuerzos razonables para localizar al padre ausente no han tenido éxito. (5) El único hermano adulto sobreviviente competente del difunto o, si hay más de un hermano adulto sobreviviente competente del difunto, el consenso de la mayoría de los hermanos adultos sobrevivientes competentes. (6) El sobreviviente adulto competente o personas, en los grados de parentesco próximo. (7) Si el difunto tiene activos suficientes, un tutor del individuo o de la propiedad, designado de acuerdo a la parte 3(comenzando con la Sección 1800) del 4° Capítulo del Código de Sucesiones. (8) El administrador público cuando el fallecido tiene activos suficientes.

Por lo tanto, tras la finalizar la investigación de la muerte del susodicho individuo, favor de entregar sus restos a:

| | | |
|---|---|---|
| NOMBRE DE FUNERARIA | | |

| | | |
|---|---|---|
| NOMBRE DE PARENTESCO (ESCRIBA EN LETRA DE MOLDE) | PARENTESCO | FIRMA DE PARENTESCO |

| | | |
|---|---|---|
| DIRECCION    CIUDAD    ESTADO    ZONA POSTAL    NUMERO DE TELEFONO | | FECHA DE FIRMA |

SI USTED NO ES EL PARIENTE PRÓXIMO DE ACUERDO A LA LEY, FIRME Y EXPLIQUE PORQUE EL PARIENTE PRÓXIMO NO ESTÁ HACIENDO LOS TRÁMITES EN ESTE ASUNTO. SI ES EL ALBACEA DEL TESTAMENTO, FAVOR DE INCLUIR UNA COPIA DEL MISMO JUNTO A ESTE DOCUMENTO.

| | | | |
|---|---|---|---|
| PARIENTE PRÓXIMO | PARENTESCO | DIRECCION / CIUDAD / ESTADO / ZONA POSTAL | NUMERO DE TELEFONO |

760739 – (REV. 4/2015)

ADDITIONAL DECEDENT INFORMATION ON REVERSE

COUNTY OF LOS ANGELES

DEPARTMENT OF MEDICAL EXAMINER - CORONER

# BODY CONTROL CARD

OV

| | | | |
|---|---|---|---|
| FIRST LETTER LAST NAME: R | APPARENT MODE: UNDETERMINED [redacted] | CIRCUMSTANCES: | CASE # 2022-00141 |
| | LAST, FIRST, MIDDLE: ROSENFELD, SCOTT VINCENT | | CRYPT # 175 |

| SEX | RACE | DOB | AGE | HGT | WGT | EYES | HAIR | BEARD / MUSTACHE | CONDITION | ☐ EMBALMED |
|---|---|---|---|---|---|---|---|---|---|---|
| M | W | 11/3/73 | 48 | 73 | 175 | BRO | BALD | BEARD: YES / MUSTACHE: YES | FAIR | |

| | | | |
|---|---|---|---|
| LOCATION: BURBANK JAIL: 200 N. 3rd ST. BURBANK | | INVESTIGATOR: K. PECK | |
| BROUGHT IN BY: F. NGAYAN | DATE/TIME: 1/4/22 @1745 | APPROVED BY: [signature] | |
| PROCESSED BY: F. NGAYAN | DATE/TIME: 1/4/22 @1815 | | |
| PROPERTY: ☐ COLLECTED ☐ NONE | | | |
| CLOTHING: ☐ ON BODY ☐ SEPARATE FROM BODY ☐ REMOVED AND WRAPPED AT FSC ☒ NONE | | | |
| PHYSICAL EVIDENCE: ☐ HAIR ☐ FINGERNAIL ☐ GSR ☒ PHOTO ☒ LIVESCAN ☐ INK PRINT | | | |
| MORTUARY: X Valley Funeral Home | | ☐ OTHER: | |
| CLOTHING RECEIVED BY: Ø | | | |
| BODY RECEIVED BY: Jose Zosal | | | |
| PRINT NAME: Jose Zosa | | EMBALMED BY CORONER Y N | |
| RELEASED BY: [signature] | DATE/TIME: 1/5/22 @1435 | | |
| APPROVED BY: [signature] | | | |

**CLOTHING ITEMIZATION:** All Clothing Must Be Listed. Do Not Discard Or Destroy Clothing Without Authorization

NONE

| Item | COLOR | SIZE | MANUF | DESCRIPTION |
|---|---|---|---|---|
| SHIRT ☐ | | | | |
| ☐ | | | | |
| UNDERSHIRT ☐ | | | | |
| PANTS ☐ | | | | |
| SHORTS ☐ | | | | |
| UNDERWEAR ☐ | | | | |
| SOCKS ☐ | | | | |
| SHOES ☐ | | | | |
| BOOTS ☐ | | | | |
| BELT ☐ | | | | |
| JACKET ☐ | | | | |

OTHER CLOTHING:

| Item | COLOR | SIZE | MANUF | DESCRIPTION |
|---|---|---|---|---|
| ☐ | | | | |
| ☐ | | | | |
| ☐ | | | | |